# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **LARRY W. COVINGTON,** | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | Case No. 11-3454-CV-S-RED-P |
| | ) | Crim. No. 09-3040-01-CR-S-RED |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

Before the Court is Movant Larry W. Covington's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.

## INTRODUCTION

Movant Larry W. Covington ("Covington") pled guilty to a conspiracy to commit and actually committing mail fraud and theft from an organization receiving federal funds. The Court sentenced Covington to a term of imprisonment for 108 months. Covington did not directly appeal his conviction and sentence. Now Covington has filed his Motion under 28 U.S.C. § 2255 challenging his sentence on three grounds. The United States responded to the § 2255 Motion and requests that the Court deny the Motion without holding an evidentiary hearing and also without issuing a certificate of appealability.

## DISCUSSION

**I. Covington has not shown that he was denied the effective assistance of counsel because his counsel did not challenge whether he qualifies as a public official or because his counsel allegedly failed to advise him about the terms of the plea agreement**

The first of the three grounds raised by Covington in his § 2255 Motion concerns whether his counsel was constitutionally deficient so as to deny him the constitutional right to the effective

assistance of counsel. An ineffective assistance of counsel claim requires a petitioner prove his or her counsel's "performance was deficient and that the deficiency prejudiced his defense." *Deltoro-Aguilera v. United States*, 625 F.3d 434, 437 (8th Cir. 2010). Deficient performance is defined as performance that "falls below the 'range of competence demanded of attorneys in criminal cases.' " *Theus v. United States*, 611 F.3d 441, 446 (8th Cir. 2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Prejudice requires Covington to "demonstrate that there is a reasonable probability that the outcome would have been different but for counsel's deficient performance." *Theus*, 611 F.3d at 447. Finally, the Court need not always address both prongs under *Strickland* and may instead focus on the prong that disposes of the ineffective assistance of counsel claim. *See Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997) (noting that it was unnecessary to address the performance prong under *Strickland* if the Court found that the defendant could not show prejudice).[1]

Covington's first ineffective assistance of counsel claim focuses on his counsel's failure to challenge the application of a base offense level of 14 under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). As the Government notes, the 14 level enhancement applies in this case pursuant to Appendix A of the Guidelines, U.S.S.G. § 2C1.1(a)(1) and U.S.S.G. § 2S.1(a)(1). The Government further notes that Covington does not challenge that these are the relevant

---

[1] Covington alleges, without citation to any authority, that the *Strickland* test for ineffective assistant of counsel claims does not apply to defendants convicted in federal court as opposed to state court. However, as *Strickland* sets forth the standard utilized in order to determine whether a defendant's Sixth Amendment right to the effective assistance of counsel was violated, it clearly applies to both state and federal court proceedings where the Sixth Amendment attaches. A long history of federal courts applying *Strickland* to § 2255 motions further demonstrates that *Strickland* applies. *See Gregg v. United States*, 674, 832-33 (8th Cir. 2012) (applying *Strickland* to the movant's § 2255 motion).

2

provisions of the Sentencing Guidelines that apply because of his guilty plea to violations under 18 U.S.C. § 1341. Rather, Covington limits his challenge to the application of § 2C1.1(a)(1) because he was found to qualify as a public official.

Covington argues that he was not a public official, as is contemplated by § 2C1.1, because he was not an elected official. Covington further argues that he was an hourly employee for the City of Nixa, Missouri ("City"), he answered to the head of the Street Department, and he did not attend any City meetings, Department Head meetings, or City Council meetings. Covington also notes that he did not have the authority to hire or terminate employees and he was not in a position of public trust. Thus, Covington argues that his counsel was deficient for failing to object to his qualification as a public official under the Guidelines.

In the Government's response it notes that the Application Notes accompanying § 2C1.1 define public official to constitute, among other things, "[a]n officer or employee or person acting for or on behalf of a state or local government, or any department, agency, or branch of government thereof, in any official function, under or by authority of such department, agency, or branch of government, or a juror in a state or local trial." § 2C1.1 App. Note 1(C). The Government further argues that Covington admitted in his Plea Agreement that he was employed by the City of Nixa to work in the Street Department throughout the relevant time period at issue, he was appointed to the position of Superintendent of the Street Department on May 6, 2004, and "[a]s an officer and agent of the City of Nixa, [Covington] ... supervised Street Department employees, recommended the purchase of goods and services, prepared Purchase Orders, [and] received delivery of goods and the performance of services." (Covington Plea Agreement p. 2-3 ¶ 3). Thus, the Government argues that Covington clearly qualifies as a public official under the Guidelines and his counsel was neither

3

deficient in failing to object to his qualification as such and Covington was not prejudiced by her failure to do so.

In his reply, Covington argues that "public official" should not be interpreted to include all employees, as it would otherwise include individuals also responsible for janitorial work. Covington cites to no relevant cases interpreting "public official."

The Court agrees that under the clear definition provided in the Application Notes to § 2C1.1 Covington's supervisory position in the Street Department qualifies as a public official. Although Covington tries to limit his role as an employee of the City, his Plea Agreement clearly established that he, as a superintendent in the Street Department, had the authority to recommend the purchase of goods and services, complete purchase orders, and receive the delivery of such goods and services. This clearly falls within the definition provided under the Application Notes. Thus, absent authority to the contrary, the Court applies the plain meaning of "public official" and finds that Covington clearly qualifies as such. *See United States v. Lange*, 592 F.3d 902, 906 (8th Cir. 2010) (applying the plain meaning of the Guidelines in the defendant's challenge to the meaning of § 2B1.1). Therefore, the Court finds that Covington cannot establish *Strickland* prejudice for his counsel's failure to raise an argument that is without merit.

Finally, the Court notes that in Covington's reply, he routinely argues, without any supporting evidence, that his counsel's performance was deficient because she did not explain the plea agreement to him and advised him to simply sign the document, and therefore he was unaware of some of the provisions in the plea agreement. However, the Court rejects Covington's clearly frivolous complaints because they are contradicted by the record at the Change of Plea hearing conducted by the Court. At the hearing, Covington admitted that he read the plea agreement (Plea

Agreement p. 4 ln. 12-15), he discussed the plea agreement with his counsel (Plea Agreement p. 4 ln. 18-19), his counsel answered all of his questions about the plea agreement (Plea Agreement p. 4 ln. 20-21), and that he understood the terms of the plea agreement (Plea Agreement p. 4 ln. 23-25). The Court then proceeded to read certain portions of the plea agreement to see if Covington had actually read the agreement, and each time Covington affirmed that he understood the sections of the agreement referenced by the Court. *See* (Plea Agreement p. 5-9). The Court also asked Covington if he had sufficient time to consult with his counsel about his decision to plead guilty and whether he was satisfied with the representation she provided, and Covington responded in the affirmative to both questions. (Plea Agreement p. 10 ln. 8-13). Finally, the Court explained that under the plea agreement, Covington would waive the right to appeal, directly or collaterally, all claims except for the ineffective assistance of counsel, prosecutorial, misconduct, or an illegal sentence, to which he responded that he understood this waiver. (Plea Agreement p. 9 ln. 8-18).

For the reasons above, the Court finds that the record establishes that Covington and his counsel discussed the plea agreement and that he understood the agreement. Therefore, his counsel was not deficient in failing to advise him about the provisions in and the consequences of the plea agreement. The Court also notes that Covington's allegations, wherein he claims that his counsel failed to properly advise him about the plea agreement and merely told him to sign the document, are allegations that he would have been aware of at the Change of Plea hearing which he failed to raise at the hearing. This is another factor that supports a finding that his counsel was not deficient. *See United States v. Newson*, 46 F.3d 730, 733 (8th Cir. 1995) (noting that a defendant's failure to raise "objections to his counsel's performance at the change-of-plea hearing, despite his knowledge then of the factors he now submits as relevant, refutes any claim of ineffective assistance of counsel

5

as a basis for withdrawing his plea") (internal citation and quotations omitted).

Lastly, the Court finds that no evidentiary hearing is necessary for these first two claims of ineffective assistance of counsel because his first claim about whether he qualifies as a public official is inadequate on its face and his second claim about his counsel's failure to advise him about the plea agreement is clearly refuted by the record. *See Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) (noting that "[a] petitioner is entitled to an evidentiary hearing on his § 2255 motion unless 'the motion and the files and the records of the case conclusively show that he is entitled to no relief' " and furthermore, no hearing is required if the claim is facially inadequate or if the record affirmatively refutes the facts alleged in support of the claim) (quoting 28 U.S.C. § 2255)).

**II. Covington qualifies as a public official under § 2C1.1(a)(1)**

Covington raises the same arguments addressed above in support of his argument that he should not qualify as a public official under the Guidelines although the issue is now raised as a direct challenge. For the same reasons above, the Court rejects this argument. Additionally, the Court notes that Covington waived his right to challenge this issue directly or collaterally, pursuant to the plea agreement, which also supports the denial of this issue.[2]

---

[2] A defendant may waive his or her right to seek collateral relief under 28 U.S.C. § 2255. *Ackerland v. United States*, 633 F.3d 698, 701 (8th Cir. 2011). The waiver will be upheld and enforced "when the claim raised falls within the scope of the waiver, the defendant knowingly and voluntarily entered into the plea agreement and waiver, and enforcement of the waiver would not result in a miscarriage of justice." *Id*. As Covington waived all challenges except to the ineffective assistance of counsel, prosecutorial misconduct, or to an illegal sentence, it is clear that his challenge to the application of § 2C1.1(a)(1) is within the scope of the waiver. There would be no miscarriage of justice in this case because even if § 2C1.1(a)(1) was improperly applied, misapplication of the Guidelines does not constitute an illegal sentence. *Ackerland v. United States*, 633 F.3d 698, 702 (8th Cir. 2011). As such, the waiver should be enforced.

### III. § 2C1.1(a)(1) was properly applied at sentencing

The last issue raised by Covington is that his counsel was constitutionally deficient because she did not argue that a 14 level increase under U.S.S.G. § 2C1.1(a)(1) was improper. Covington argues that a 14 level increase under this provision is improper because § 2C1.1(a)(1) applies in this case pursuant to his conviction under 18 U.S.C. § 1341 and the commentary under the "background" section to the guideline provision states that the provision's application pursuant to § 1341 exists where there was a "fraud involving the deprivation of the intangible right to honest services of government officials." Covington further notes that the United States Supreme Court in *Skilling v. United States*, 130 S.Ct. 2896, 2931 (2010) determined that the crime of mail or wire fraud committed by depriving "another of the intangible right of honest services" under 18 U.S.C. § 1346 must also include either a bribe or kickback. Covington argues that because § 2C1.1 uses the same "intangible right to honest services of government officials" phrase utilized in § 1346, the Supreme Court's opinion in *Skilling* mandates that the application of § 2C1.1(a)(1) also requires a bribe or kickback and he argues that no such bribe or kickback is present in this case.

The Government argues that the issue raised in *Skilling* is not present in this case because Covington has not been convicted under 18 U.S.C. § 1346. The Court agrees and finds that it is not proper to compare and apply *Skilling* to this case.

In *Skilling*, the Supreme Court was faced with a situation where the defendant was charged under § 1346's honest services provision. The defendant was charged with defrauding the shareholders at Enron "by misrepresenting the company's fiscal health." *Id*. at 2934. In finding that § 1346 required there to be a bribe or kickback involved, the Court noted that in many "honest services" cases, there is no actual deprivation of a property right suffered the aggrieved party, rather

7

there is only a harm to the right of honest services. *Id*. at 2926. In this case, Covington unquestionably deprived the City of property by defrauding the City into paying on false invoices. There was no need to charge Covington under § 1346 because Covington was guilty of "traditional" fraud under § 1341. The Court finds that *Skilling* is not applicable to a defendant found guilty under § 1341 who may potentially receive a sentencing enhancement under § 2C1.1. The Court also finds that § 2C1.1 is intended to reach public officials who engage in fraudulent activity, and as noted above, Covington clearly qualifies as such. For these reasons, the Court finds that Covington was not prejudiced by his counsel's failure to raise an objection to the application of § 2C1.1 under *Skilling* at the sentencing hearing and he is not entitled to an evidentiary hearing on this issue.

**IV. The Court will issue a certificate of appealability on Covington's final issue**

The Court must also decide whether to issue a certificate of appealability which would allow Covington to appeal the denial of his § 2255 Motion. A certificate of appealability should only issue if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires Covington to show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons set forth above under the first two grounds raised, the Court finds that no certificate of appealability should issue. However, the Court finds that reasonable jurists could disagree with the Court on Covington's third ground. As such, the Court issues a certificate of appealability allowing Covington to challenge whether the Supreme Court's decision in *Skilling v. United States*, wherein the Supreme Court determined that committing mail or wire fraud involving the deprivation of "intangible right to honest services of government officials" requires a bribe or kickback, also applies to the application of § 2C1.1 pursuant to a conviction

under 18 U.S.C. § 1341.

## CONCLUSION

For the above reasons, the Court **DENIES** the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Finally, the Court issues a certificate of appealability as set forth above.

**IT IS SO ORDERED**.

DATED:  June 15, 2012                                     /s/ Richard E. Dorr
                                                                    RICHARD E. DORR, JUDGE
                                                                    UNITED STATES DISTRICT COURT